GEORGE M. RICE, as Executor, etc., of WILLIAM D. ANDREWS, Deceased, Plaintiff, *v.* MARCELLA P. ANDREWS, Defendant.

Supreme Court, Lewis County, August 2, 1926.

**Husband and wife — divorce — maintenance of child during minority — judgment of divorce cannot be modified after death of husband to provide for maintenance of minor child.**

A judgment of divorce cannot be modified after the death of the husband to provide that the husband's estate shall be charged with the support of a minor child of the marriage during the period of his minority.

MOTION to amend decree of divorce relative to support and maintenance of infant child of the parties to the marriage.

*Miller B. Moran*, guardian *ad litem*, for Clifford Pershing Andrews, infant, for the motion.

*Frank Bowman*, for the plaintiff, opposed.

EDGCOMB, J. In 1924 William D. Andrews, plaintiff's testator, obtained a divorce against his wife, the defendant Marcella P. Andrews. The judgment awarded the custody of the issue of the marriage, Clifford Pershing Andrews, to the father, subject to the rights of the maternal grandparents to have possession of the child on certain specified occasions.

On November 10, 1925, the father died, leaving a last will and testament in which he totally disinherited his son. That will has been admitted to probate by the surrogate of Lewis county, and disposes of a substantial estate. The child, through his guardian *ad litem*, makes this motion for an order modifying the decree of divorce in so far as it affects his care, custody and control, by charging the estate of his father with his maintenance during his minority, and declaring the expense of such care to be a lien against the assets of the estate and the executor thereof. The

executor of Mr. Andrews' estate has been substituted as a party to the divorce action in the place of decedent, and opposes this motion.

The theory of the infant is that the court having obtained jurisdiction not only of the subject-matter but also of the parties to the divorce action, retains such jurisdiction so long as there is an infant child whose welfare is to be guarded, and that the father, having asked for and been granted the care, custody and control of the child, cannot defeat the decree of the court by dying and leaving all his property to other parties; that a court of equity may amend or alter a decree of divorce, so far as it relates to the care and maintenance of the child, by an appropriate provision which will make such support and maintenance a charge against the estate of the father during the minority of the infant.

The courts of this State have no common-law jurisdiction over the subject of divorce, their authority being confined to the exercise of such express and incidental power as is given them by statute. The English law relating to divorce constitutes a part of the ecclesiastical and not of the common law of that country, and has never been adopted by this Commonwealth. (*Burtis* v. *Burtis,* 1 Hopk. Ch. 557; *Peugnet* v. *Phelps,* 48 Barb. 566; *Livingston* v. *Livingston,* 173 N. Y. 377, 380; *Walker* v. *Walker,* 155 id. 77; *Erkenbrach* v. *Erkenbrach,* 96 id. 456, 463.)

The only provisions of the statute covering the custody and maintenance of the children of divorced parties are contained in the various sections of the Civil Practice Act relating to matrimonial actions. Section 1170 of that act (as amd. by Laws of 1925, chap. 240) provides that when an action for divorce is brought by either husband or wife the court must, either in the final judgment or by an interlocutory order, make such direction for the custody, care, education and maintenance of the children of the marriage as justice requires. There is nothing in this section which authorizes the court to bind the estate or property of the party to whom it gives the custody of the child or whom it orders to pay for such support, maintenance and education.

The duty of parents to support and educate their children during minority is well established. That obligation is not only a legal but a moral one; it springs from a natural instinct which one feels to protect and nourish his offspring. As a general rule such obligatory service is primarily imposed on the father during his lifetime. One has the legal right, however, to disinherit any natural heir or next of kin, and if he chooses to cut off his child and will his property to others, such child has no claim against his father's estate for his support and maintenance, but must shift

for himself, or be dependent upon others for his support. Concededly if decedent and the defendant had lived happily together and no action for a divorce or separation had been brought, and the decedent had disposed of his property in identically the same manner provided by his present will, the movant would have had no standing in court to compel his father's estate to support him during his minority.

Does the fact that a court of competent jurisdiction has divorced the parents, and upon the application of the father, given to him the custody of the issue of this unfortunate marriage change the father's liability toward the child, and make the obligation which he assumed a charge against his estate rather than a personal one which ceased at his death? Is the duty which is imposed upon decedent by being given the care and custody of his child by an order of the court any greater than the duty which rested upon him when he brought this lad into the world? Does this provision in the judgment of divorce prevent the father from doing what he otherwise had a legal right to do, totally disinheriting the child? It seems to me that these questions answer themselves.

While the decree of divorce does not order the father to pay any sum whatever to the infant, or to any one on his behalf, for his support and education, the provision awarding decedent the custody of the child carries with it an implied obligation to support and educate the lad in a manner suitable to the means and surroundings of the parent. But that obligation rested upon the father before any divorce action was begun, and would, had he lived in peace and harmony with the boy's mother, have continued to rest upon him during the balance of his life, but no longer. It would not have survived the parent. Without doubt the dissolution of the marriage raised new questions concerning the obligations of the parents to their child. The court was charged with the duty of making such disposition of the boy as justice required. The well being of the child is always uppermost in the court's mind and controlling in such decision. The father may, in a proper case, be relieved of the obligation to further support his offspring, or the duty which he assumes at the birth of his descendant may be continued. But I do not take it that that duty is increased by reason of a provision which awards him the custody of the child, rather than the mother or some third person.

The liability of the decedent for the support of his son is not founded on any contract, express or implied. It is simply a natural and legal duty which is imposed on any father who brings a child into the world. When the court granted this divorce and dissolved the marriage between the parents and gave the custody of the lad

to the father, it simply continued by implication that general duty. The obligation under the decree is still a personal one, and does not constitute a debt of the parent. It cannot, therefore, be made operative upon his estate after his death.

The duty resting upon the father to support and maintain his child during minority does not rest entirely upon the parental relation. The obligation carries with it the corelative right to the services and society of his offspring. This right the father no longer has. He is not here to enjoy association with his son, nor to profit by his earnings. His estate cannot stand in his shoes in this regard. One of the considerations which made the father responsible for the support and maintenance of the child vanished at the death of the former.

A husband is obligated to support his wife. This obligation is founded upon principles analogous to those in respect to his liability for the care of his child. The same statute which authorizes the court in a divorce action to provide for the custody, maintenance and education of the children of the parties, empowers the court to grant to the wife, if she be successful, such sum as may be proper for her support. Such allowance takes the place of the right which every wife has to her support, and which she loses when the bonds of matrimony are broken, and she is no longer the spouse of her husband.

While there are decisions in this State which hold that, under certain circumstances, alimony continues after the death of the husband and becomes a charge upon his estate, those cases have been overruled, and such is no longer the rule.

The first case in this State in which that question was involved is *Burr* v. *Burr* (10 Paige, 20; affd. by the Court for the Correction of Errors, 7 Hill, 207). It was held there that the court might allow alimony to a wife during her life, although she outlived her husband. At that time the statute contained a provision permitting the court to make an award for the support and maintenance of the wife by the husband, " or out of his property." This latter provision does not form a part of the present statute.

Later the same question came before the Special Term on a demurrer in *Field* v. *Field* (66 How. Pr. 346; 15 Abb. N. C. 434). It was there held that the obligation to pay alimony was a personal one and ended with the death of the husband. This case was affirmed by the late General Term (15 Abb. N. C. 437).

In *Galusha* v. *Galusha* (43 Hun, 181) it was held that, while it was not usual for the court to direct by judgment the payment of alimony beyond the joint lives of the parties, it had power to so do, and while such provision alone might not be effectual in respect

to installments accruing after the death of the husband, yet if he had given security pursuant to a provision of the judgment, such act on his part would make the provision for alimony to his wife during her life effectual, even though he died first. This case was reversed by the Court of Appeals (116 N. Y. 635), but upon an entirely different theory.

In *Johns* v. *Johns* (44 App. Div. 533; affd., without opinion, 166 N. Y. 613) a decree of divorce required the husband to pay alimony to his wife during her natural life, but did not in express terms make such payments a charge against his estate. He died first. The court refused to hold his estate liable for further payment of alimony.

Then came the decision of the Court of Appeals in *Wilson* v. *Hinman* (182 N. Y. 408) which reversed the judgment of the lower courts and settled any uncertainty which had heretofore existed on this subject. That case laid down the rule that a requirement to pay alimony does not survive the death of the husband, even though the wife outlives him, and that all claims to alimony on the part of the wife terminate at the death of her former husband, and that the court has no authority to include in the final judgment a provision that alimony shall continue during the life of the wife, if she outlives her husband.

The weight of authority is the same in other States. (*Knapp* v. *Knapp*, 134 Mass. 353; *Briggs* v. *Briggs*, 24 S. C. 377; *Maxwell* v. *Sawyer*, 90 Wis. 352; *Dewees* v. *Dewees*, 55 Miss. 315; *Casteel* v. *Casteel*, 38 Ark. 477; *Francis* v. *Francis*, 31 Gratt. [Va.] 283; *Wallingsford* v. *Wallingsford*, 6 H. & J. [Md.] 485; *Lockridge* v. *Lockridge*, 3 Dana [Ky.], 28; *Gaines* v. *Gaines*, 9 B. Mon. [Ky.] 295; *O'Hagan* v. *Exr. of O'Hagan*, 4 Iowa, 509; *Lennahan* v. *O'Keefe*, 107 Ill. 620; *Rogers* v. *Vines*, 6 Ired. [N. C.] 293.)

The movant points to the broad language used in the statute which authorizes the court to make such order for the custody and maintenance of the children of the parties to a matrimonial action " as justice requires." True, that is a broad provision. The same statute, however, gives the court identically the same power to award the wife an allowance for her support, but as already pointed out such language is not sufficiently comprehensive to permit an allowance to a wife after the death of her husband. It can hardly be claimed, therefore, to be broad enough to justify the court after the death of a father in making his estate liable for the support of his child.

The provision of the judgment as it now stands does not order the father to pay any amount for the support of the movant. It simply gives the father the custody of the child. It is claimed,

however, that the judgment should now be amended by inserting the desired provision.

It must be borne in mind, as above indicated, that the court has no inherent authority to modify its final judgment in this action. Any right it has along that line must be given it by the Legislature. (*Kamp* v. *Kamp*, 59 N. Y. 212; *Goodsell* v. *Goodsell*, 82 App. Div. 65.)

Section 1170 of the Civil Practice Act gives the court the right, at any time after final judgment, to amend, vary or modify any direction relative to the care, custody, education or maintenance of the children of the parties, or for the support of the wife, upon application of either party, or of any person having the care and custody of a child. While this section does not, in so many words, provide for a modification of the judgment upon the application of the child itself, I think that it is broad enough to include such a situation. The court is ever zealous of the welfare of its wards, and no construction should be given to this section which would deprive a child of the right to apply direct to the court for a change of conditions which would inure to its benefit, unless it is clearly apparent that the Legislature intended to deny it such right. I think, however, that the only fair construction to be given this section is that the application for a modification of the judgment should be made while the parties to the action are both living. At any rate no change could be made which could not have been inserted in the judgment when it was first rendered. If I am right in my conclusions already reached, the desired provision would never have been proper in the judgment, and has no place there now.

This is a case which appeals to the sympathy of the court, and any tribunal would be glad to make provision for this lad, who, through no fault of his own, has started life under a heavy handicap, and who is now left, at a tender age, to grow up as best he can by his own efforts and those of his maternal grandparents. But as I view the law the court is powerless to compel the estate of the father to support the lad, or to interfere with the father's power to dispose of his estate as he saw fit. The remedy for such a situation rests with the Legislature and not with the court.

Motion denied, without costs.