FRANK ELLIOTT, JERRY LEA ELLIOTT, JERLINE ELLIOTT, REGINALD ELLIOTT, HARRY LEON ELLIOTT AND DONNELL ELLIOTT, MINORS, BY THEIR NEXT FRIEND, GEORGIANA ELLIOTT, v. ROBERT ELLIOTT, EXECUTOR OF THE ESTATE OF HENRY ELLIOTT, DECEASED.

(Filed 27 February, 1952.)

**1. Common Law—**

So much of the common law as has not been abrogated or repealed by statute is in full force and effect in this State. G.S. 4-1.

**2. Parent and Child § 5: Executors and Administrators § 15g—**

The common law obligation of a father to support his minor children is not a property right but is a personal duty which is terminated by the death of the father, and cannot be made the basis of a claim against the estate of the father who has disposed of his property by will without providing for the support of his minor children.

**3. Constitutional Law § 10c—**

The Supreme Court does not make the law, this being the province of the General Assembly.

APPEAL by plaintiffs from *Rousseau, J.,* at October Term, 1951, of CASWELL.

Civil action in behalf .of plaintiffs, minors under the age of eighteen years, children of Henry Elliott, deceased, to recover against his estate for their reasonable necessary support until they reach the age of eighteen years, respectively, heard upon demurrer filed by defendants to complaint of plaintiffs.

In the complaint these facts, summarily stated, are alleged:

I. Henry Elliott, a Negro, resident of Caswell County, North Carolina, was married twice. To the first union six children were born. To the second twelve children were born, eleven prior to his death, and the twelfth, Donnell Elliott, being then *in ventre sa mere.*

II. At the time of the death of Henry Elliott (1) all of the children of his first marriage were adults,—five of them residing in Washington, D. C., and the other in Massachusetts; (2) six of the children of the second marriage were over the age of eighteen years; and (3) the other five children then born of the second marriage ranged in age from approximately fifteen years down to approximately two years, and they, with the youngest child, Donnell Elliott, then unborn, are now plaintiffs in this action.

III. Henry Elliott, at the time of his death, was residing with his second wife, Georgiana Elliott, and their children, the plaintiffs, at Leasburg in said Caswell County. He was seized of 78.3 acres of land of approximate value of $5,000, and possessed of personal property, bank, and postal savings and other miscellaneous items, of total value of approximately $5,400.

IV. Henry Elliott left a will, with witnesses, which has been duly probated and recorded in the office of Clerk of Superior Court of Caswell County. In this will (a) he devised all of his land he owned "except the two acres I now live and make my home" to the six children, naming them, of his first marriage; and "the two acres I now live" to the youngest son of the first marriage and the next oldest child, and daughter of the second marriage; and (b) he bequeathed to his wife, and to each of the three of the first six children of the second marriage over 18 years of age and to the third oldest of the children of the second marriage under 18 years of age the sum of $5.00, and to each of the other children of the second marriage, both those over 18 years of age, as well as those under that age, the sum of $1.00; and (c) lastly he made this bequest, "after all my claims have been settled all of my personal property be equally divided among the first named set of children viz"—naming those of the first marriage.

V. Defendant is the duly qualified and acting executor of the estate of Henry Elliott.

ELLIOTT *v.* ELLIOTT.

VI. The mother of plaintiffs, 44 years of age, of the Negro race, is without property and without means, by reason of her age, and inadequate training for gainful occupation, to support plaintiffs, and plaintiffs have no property or means of support and by reason of their ages are unable to provide themselves with support.

Upon these allegations of fact, plaintiffs say that the natural and legal duty of the father to support his infant children extends beyond his death to his estate.

And plaintiffs pray judgment that they have and recover of defendant such sums as may be reasonable and necessary for their support until they become 18 years of age, and costs, and attorney's fee.

Defendant demurred to the complaint for that "the complaint does not state facts sufficient to constitute a cause of action against the defendant in that the estate of a parent is not liable under the laws of the State of North Carolina for the support and maintenance of the parent's infant children other than the provision made under the statute providing for a widow's year's allowance."

The court being of opinion that the complaint does not state a cause of action, entered judgment sustaining the demurrer. However, the court stated in the judgment that "this judgment is rendered without prejudice to any rights which Donnell Elliott, one of the plaintiffs, may have in the estate of his late father, Henry Elliott, under the provisions of Sec. 31-45 of the General Statutes of North Carolina."

To the signing of the judgment sustaining the demurrer, plaintiffs object and except, and appeal to the Supreme Court, and assign error.

*D. Emerson Scarborough for plaintiffs, appellants.*
*Burns & Long for defendant, appellee.*

WINBORNE, J. Whether the facts and circumstances alleged in the complaint, if supported by competent evidence, be basis on which may be founded a challenge to the validity of the will of Henry Elliott, *In re Will of Redding,* 216 N.C. 497, 5 S.E. 2d 544; *In re Will of West,* 227 N.C. 204, 41 S.E. 2d 838, is not presented by this appeal. Such question would be for another forum.

The question here is this: Under the laws of the State of North Carolina does the obligation of a father to provide necessary support for his minor children terminate at his death? The effect of the ruling of the court from which this appeal is taken is that on the facts alleged in the complaint of plaintiffs such obligation does terminate with that event. And we concur.

While the duty or obligation of a father to support his children during minority has been the subject of decision in opinions of this Court, *Wells*

*v. Wells,* 227 N.C. 614, 44 S.E. 2d 31, 1 A.L.R. 2d 905, the question above stated has not been presented or decided by this Court.

Indeed, in brief of attorney for plaintiffs, the appellants, filed on this appeal, the argument is opened with this statement: "It does not appear that this particular situation is covered by statutory law in North Carolina, or that the question has been previously presented to this Court. Therefore, it becomes necessary for the plaintiffs to rely upon the common law to support their cause."

Hence, and rightly so, we look to the common law,—for so much of the common law as has not been abrogated or repealed by statute is in full force and effect within this State. G.S. 4-1, formerly C.S. 970. Among other cases, see *S. v. Hampton,* 210 N.C. 283, 186 S.E. 251; *Merrell v. Stuart,* 220 N.C. 326, 17 S.E. 2d 458; *S. v. Batson,* 220 N.C. 411, 17 S.E. 2d 511; *S. v. Emery,* 224 N.C. 581, 31 S.E. 2d 858; *Hoke v. Greyhound Corp.,* 226 N.C. 332, 38 S.E. 2d 105; *Moche v. Leno,* 227 N.C. 159, 41 S.E. 2d 369; *S. v. Sullivan,* 229 N.C. 251, 49 S.E. 2d 458; *Scholtens v. Scholtens,* 230 N.C. 149, 52 S.E. 2d 350; *Ionic Lodge v. Masons,* 232 N.C. 648, 62 S.E. 2d 73.

In this connection, we find in American Jurisprudence this statement: "By the rules of the common law, a father is under no obligation to provide for the support of his infant children after his death; his liability for their support is held to terminate with that event, and no claim therefor survives against his estate." 39 Am. Jur. at 647, Parent and Child, Sec. 40.

And in Corpus Juris Secundum, referring to duration of father's duty, and death of father, the writer states: "The duty of the father to support and maintain his child . . . is a continuing one and endures until legally terminated. In the absence of an agreement, the father's duty to furnish support to his children ordinarily ceases on his death, and thereafter at common law . . . the duty of supporting the child devolves on the mother, except in certain instances . . ." 67 C.J.S., Parent and Child, Sec. 15, citing these cases: *Rice v. Andrews,* 217 N.Y.S. 528, 127 Misc. 826; *Haimes v. Schonwit,* 50 N.Y.S. 2d 717, modified on other grounds, 52 N.Y.S. 2d 272, 268 App. Div. 652; *Silberman v. Brown,* Com. Pl. 72 N.E. 2d 267; *Robinson v. Robinson,* 50 S.E. 2d 455.

In *Rice v. Andrews, supra,* a case where in a divorce proceeding the father had been given the custody of his son, the New York Court said: "The obligation under the decree is still a personal one, and does not constitute a debt of the parent. It cannot, therefore, be made operative upon his estate after his death."

In *Silberman v. Brown, supra,* the Court recognizes the principle, epitomized in headnote, that "In absence of any agreement, a father's liability for support of a minor child ordinarily terminates at father's death."

And in *Robinson v. Robinson, supra,* the Supreme Court of West Virginia considered the question as to whether the force and effect of a decree in a divorce proceeding, for maintenance and support of infant children, operated beyond the death of their father against whom the decree was entered, and rested decision on the case of *Blades v. Szatai,* 151 Md. 644, 135 A. 841, 50 A.L.R. 232. *Fox, J.,* writing for the Court, quotes from the *Blades case* the following: "A father is under the common-law obligation to support his child during the latter's minority without regard to a divorce decree prescribing the amount and to whom payable, unless it orders that the child be supported by another," and "A father's obligation to support his child during the latter's minority ceases at the father's death, no matter what the child's age may be, and his estate is not liable for payments accruing thereafter under a divorce decree." And the writer, continuing, said: "This decision is founded upon the theory that the common-law obligation of a father to support his child ceases upon his death, and that, upon that event, the interest of the child in his estate is based upon the statutory right of inheritance, where the father dies intestate, but, subject, of course, to the right of a father to disinherit a child by the execution of a will; and upon the further theory that, to hold otherwise would be to disrupt the general theory of inheritance, prefer one child over another, and interfere with the common rules firmly established by statute law, governing the descent and distribution of the property of a decedent." And the Court declared that the common law obligation is one which, under all the authorities, ceases at the death of the father.

While these authorities are not controlling on this Court, yet they point out with convincing effect the common law rule that the obligation of a father to support his minor children ceases upon his death,—a rule which has not been abrogated or repealed by statute in North Carolina. And hence is still in effect. G.S. 4-1.

This rule is consonant with general statutes enacted by the General Assembly of North Carolina pertaining to (1) Administration of estates, Chapter 28, including Article 17 thereof prescribing rules as to distribution; (2) Rules of descent, Chapter 29; (3) Widow's year's allowance, Chapter 30, Article 4, and (4) Wills, Chapter 31.

The relation of parent and child is a status, and not a property right. 67 C.J.S. 628, Parent and Child 2. Indeed, this Court, in the case of *Ritchie v. White,* 225 N.C. 450, 35 S.E. 2d 414, in opinion by *Stacy, C. J.,* had this to say: "It is the public policy of the State that a husband shall provide support for himself and family . . . This duty he may not shirk, contract away, or transfer to another . . . It is not 'a debt' in the legal sense of the word, but an obligation imposed by law, and penal sanctions are provided for its willful neglect or abandonment . . ." See also

Article 40 of Chapter 14 of General Statutes entitled "Protection of the family." These statutes are personal ones.

Finally it may be said that this Court does not make the law. This is the province of the General Assembly. *Roberts v. Roberts,* 185 N.C. 566, 118 S.E. 9; *Scholtens v. Scholtens, supra.* And the General Assembly has not seen fit to modify the common-law rule that the obligation of a parent to support his children during minority terminates on the death of the parent.

Hence the judgment, sustaining the demurrer to the complaint, is Affirmed.