**John B. AHERN, Plaintiff-Appellee,**

v.

**VETERANS ADMINISTRATION,
Defendant-Appellant.**

No. 75–1667.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 20, 1976.

Decided June 25, 1976.

John J. Duhigg, Albuquerque, N. M. (Bruce P. Moore, Alburquerque, N. M., on the brief), of Duhigg & Cronin, Albuquerque, N. M., for plaintiff-appellee.

Mark N. Mutterperl (Leonard Schaitman, Attys., Appellate Section, Washington, D. C., on the brief), (Rex E. Lee, Asst. Atty. Gen., Washington, D. C. and Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for defendant-appellant.

Before McWILLIAMS and BARRETT, Circuit Judges, and STANLEY,* District Judge.

BARRETT, Circuit Judge.

The United States through the Veterans Administration (VA) appeals from a judgment entered in favor of John B. Ahern (Ahern) in the amount of $150,000. Ahern filed suit pursuant to 28 U.S.C.A., § 1346(b), commonly referred to as the Federal Tort Claims Act.

### Facts

This case involves the medical treatment administered to Ahern in connection with a cancerous tumor.

In early 1971 Ahern complained that he was experiencing irregularity in his bowel movements. He consulted a physician who advised him that his problem was not serious. The condition continued. Ahern again sought medical advice. He was examined in early May by a Dr. McCarthey. The results of this initial examination disclosed that Ahern had a large tumor and was suffering from carcinoma of the rectum. It was recommended that Ahern enter the Veterans Administration Hospital for immediate medical attention.

Upon his admission to the VA Hospital, Ahern was again examined. This examination disclosed that his condition was critical. The examining and consulting physicians were fearful that the tumor would obstruct the colon. The dimensions of the tumor were described by Dr. Lewis, Ahern's primary treating physician, as approximately eleven centimeters in length and seven centimeters above the anus. [R., Vol. X at 11]. Due to the unusual size of the tumor, it was concluded that the tumor was non-resectable. Preoperative radiation was thereupon employed in order to reduce the size of the tumor so that it could eventually be removed by surgery. It was the judgment of the VA physicians that a total dosage of 2999 rads should be administered to Ahern within a five-day period. Shortly thereafter, 700 rads were administered on the first two days and 533 rads on the next three days. This dosage was conceded to be a drastic amount measured by the relatively short time span in which it was administered. Dr. Lewis stated at trial:

> [W]e felt we had a limited time in which to treat Mr. Ahern. We wanted to give him as much radiation as the board and our consultants felt could be given with reasonable safety, realizing increased risk, with the faster therapy dose, but still, to get it done as quickly as possible, because of his pending obstruction. [R., Vol. X at 35].

Following the radiation treatments surgery was performed and the tumor was removed. Following the operation, Ahern developed numerous complications.[1]

---

* Of the District of Kansas, sitting by designation.

1. The complications which developed were described at trial by Dr. Rosenbaum as follows:

> He is sixty-eight and a half (68½") inches tall, weighed 234 pounds. He has a colostomy in the mid-abdomen, with midline abdominal scars; surgical scars. There's a large rupture in the left lower or lower abdomen.

> The testicles are missing; they have been removed. His penis is scarred. The right groin is thick; is scarred and tender. There is missing bone and muscle from his right buttock where he sits, so that he sits leaning to the right unless he adjusts for it with a cushion.

> He has skin grafts on his low back and sacral areas. He has some shortening of the right lower extremity, with stiffness in his

As a result of these post-operative complications, Ahern filed this suit alleging that employees of the United States negligently administered excessive amounts of radiation to him, and that such negligence was the proximate cause of the resulting injuries. [R., Vol. 1 at 18]. Trial was to the court.

On appeal the VA alleges trial court error: (1) in imposing liability upon the government on a negligence theory; (2) in imposing liability on the government based upon an assault and battery theory.

### I.

The trial court found that:

. . . the plaintiff was injured at the Veterans Hospital in Albuquerque in May of 1971, . . . and that the cause of the injury was negligence . . . on the part of the doctors in treating him with radiation in excessive quantities over a very short period of time, and that the treatment was—constituted malpractice.

\* \* \* \* \* \*

The expert evidence in the case indicates that . . . the standards in the medical community, in this community in Albuquerque and in the nation, indeed . . . did not exceed two hundred and fifty (250) Rads per day; that the range actually was two hundred to two hundred and fifty (200–250) Rads per day. The giving of seven hundred (700) Rads a day was not in accordance with anybody's standard. Indeed, it was not even given

on the basis of a standard of care by the doctors involved, but on the basis of this entirely erroneous rumor.[2] [R., Vol. XII at pp. 373–374].

 Findings of the trial court will not be disturbed unless they are found to be clearly erroneous. Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A.; *Quarles v. Fuqua Industries, Inc.,* 504 F.2d 1358 (10th Cir. 1974). On appeal, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences that may reasonably be drawn therefrom. *Hart v. Western Investment and Development Company,* 417 F.2d 1296 (10th Cir. 1969). Further it is fundamental that an appellate court does not try the factual issues de novo. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Halliburton Company v. Dow Chemical Company,* 514 F.2d 377 (10th Cir. 1975); *Sims Consolidated, Ltd., v. Irrigation and Power Equipment, Inc.,* 518 F.2d 413 (10th Cir. 1975), cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141.

 We shall now consider whether the trial court erred in finding that the standard of care in administering radiation to reduce a cancerous tumor was 200–250 rads per day when Ahern was treated. There was, in our opinion, ample testimony elicited at trial to support the trial court's finding that the administration of 2999 rads over a five-day period constituted negligence. In this regard Dr. Dan E. Smith, the Chief of Surgical Services for the VA,

---

right hip, especially, but also some in the left that is marked.

From his medical records, he has had urinary bladder removed, and his ureter is placed into other means for drainage of the urine. There is a skin rash in his groin and thigh on the right, especially.

The lower sacrum and the coccyx have been removed. The man is not able to stand for very long, to sit for very long. He has to use a special cushion. [R., Vol. XI at 227–228].

2. The erroneous rumor to which the court made reference was a paper that had been delivered at a medical conference at San Diego, California in January, 1971. The paper pur-

portedly recommended a course of treatment similar to that administered to Ahern. The paper makes reference to a 1967 study conducted by Doctors DeWeerd and Colby in which they found that doses of 1800 to 2400 rads delivered to the bladder in 3 or 4 days, followed by surgery, did not interfere with the healing process. Our review of the record discloses that this is the only authority which approaches recommendation of a daily dosage of 700 rads. Therefore, while we cannot completely agree with the trial court's finding that the dosage administered was based upon an "erroneous rumor", we consider any error in this regard to be harmless. Fed.Rules Civ. Proc. Rule 61, 28 U.S.C.A.; 28 U.S.C.A. § 2111.

testified that at the time the 2999 rads were administered to Ahern over the five-day period he knew of no medical research which recommended giving such a large dosage in this time span [R., Vol. XI at 250] and that the amount of radiation administered to Ahern was more than he believed should have been administered. [R., Vol. XI at 251]. Dr. Kligerman, a radiation oncologist and Director of the Cancer Society, testified that he would not have given that amount of radiation to Ahern had he been Ahern's physician. [R., Vol. X at 82]. Dr. Grossman, a radiologist, testified that 700 rads a day was a greater daily dose of radiation than he had ever heard or read of. [R., Vol. XI at 277]. Dr. Lewis, Ahern's primary treating physician, testified that in his opinion administering this dosage over a five-day period was experimental. [R., Vol. XI at 147]. Expert testimony was also elicited which established that the acceptable range of daily radiation dosage was between 180 rads a day and 250 rads a day.[3]

[R., Vol. X at 61]. Accordingly, based on the record before us, we hold that the finding of the trial court that the standard of care involved in this case relating to the administration of radiation was between 200 and 250 rads a day is not clearly erroneous.

■ We turn now to the issue of whether Ahern gave an informed consent to the radiation treatment administered to him, and whether the facts presented in this controversy establish a cause of action for medical malpractice under the law of New Mexico. In a Federal Tort Claims Act suit, the law of the place where the alleged negligent conduct (or omission) occurred must be applied. 28 U.S.C.A., § 1346(b), *supra*; *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); 1 Barron & Holtzoff (Wright Ed.), § 54, pp. 294–297.

The trial court found that Ahern did not give any informed consent to the course of

radiation treatment which was administered. The record reflects that the testimony in regard to this issue was in conflict.

■ Dr. Lewis testified that Ahern was fully informed of the type of treatment that was to be administered and of the possible complication which could arise from the treatment. [R., Vol. XI at 159]. Dr. Blakely testified that he was present at the informed consent session and generally recalled that Ahern was informed of the treatment to be administered. [R., Vol. IX at 29]. Ahern, however, denied that he was ever fully informed of the experimental aspects of the treatment or the possible consequences of administering large daily dosages. [R., Vol. XII at 320, 324]. In view of the inconsistency in the evidence on the issue of consent, the trial court was obligated to weigh the credibility of the witnesses. Where the cause is tried to the court, the resolution of conflicting evidence is solely within the province of the court. Its findings must be given great weight in light of the fact that it had the opportunity to hear and observe the witnesses. *Marken v. Goodall*, 478 F.2d 1052 (10th Cir. 1973); *United States v. 79.95 Acres of Land, etc., Rogers Co., Okl.*, 459 F.2d 185 (10th Cir. 1972). We hold that the trial court did not err in its finding, based upon the conflicting testimony, that Ahern did not give an informed consent.

■ Our review of the law of New Mexico on the issue of medical malpractice discloses that the trial court did not err in finding that Ahern had established a cause of action based upon negligence. In *Cervantes v. Forbis*, 73 N.M. 445, 389 P.2d 210 (1964),[4] the Supreme Court of New Mexico held:

Before a physician or surgeon can be held liable for malpractice in the treatment of his patient, he must have departed from the recognized standards of medical prac-

---

**3.** Dr. Kligerman described these figures as average doses. It should be pointed out, however, that he also stated there is always some variation from these figures.

**4.** *See also Williams v. Vandenhoven*, 82 N.M. 352, 482 P.2d 55 (1971), for the rule that in New Mexico proof of violation of the standard of care in a malpractice suit must be established by expert testimony.

tice in the community, or must have neglected to do something required by those standards.

389 P.2d at 213.

We have heretofore concluded that the expert testimony elicited at trial established that the administration to Ahern of a total dosage of 2999 rads over a five-day period was not in conformity with the recognized standard of care within the medical community. Were we to hold otherwise we would, in effect, be denying the trial court finding that there exists an established criteria by which a physician's conduct must be evaluated in this situation. We recognize that there are many considerations that may influence a doctor's decision on the amount of radiation to be administered in any given case. However, our legal system requires that the treatment to be administered must be within the bounds of recognized medical standards in order to overcome legal challenges such as that presented in this case. Accordingly, in order for a physician to avoid liability by engaging in drastic or experimental treatment, which exceeds the bounds of established medical standards, his patient must always be fully informed of the experimental nature of the treatment and of the foreseeable consequences of that treatment. Such consent was not established in the eyes of the fact finder in this case.

Having held that the administration of 2999 rads over a five-day period constituted negligence, we need not reach the assault and battery issue raised by the VA.

WE AFFIRM.