H. T. MULLEN, JR., ADMINISTRATOR C.T.A. OF THE ESTATE OF WALTER W. SAWYER, JR. v. GWENDOLYN B. SAWYER

No. 51

(Filed 20 January 1971)

1. Parent and Child § 7— father's duty to support children

At common law the father's duty to support his children did not survive the father's death; this rule obtained even though the children were minors.

2. **Parent and Child § 7— father's contractual obligation to support children**

    The support of a child by a parent may be the subject of a contract; the father may by contract create an obligation to support his child which will survive his death and constitute a charge against his estate, in which case the ordinary rules of contract law are applicable.

3. **Judgments § 10— consent judgment — contract between the parties**

    A consent judgment is a contract between the parties entered upon the records of the court with the approval and sanction of a court of competent jurisdiction, and it is construed as any other contract.

4. **Contracts § 12— construction of contract — intention of the parties**

    The heart of a contract is the intention of the parties, which is ascertained by the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time.

5. **Executors and Administrators § 20— debt of the estate — father's consent judgment to pay for children's support and college education**

    A consent judgment in which a father agreed to support the children of a prior marriage and to provide them with a four-year college education created a debt in the legal sense which survived the father's death and became an obligation of his estate, where the provisions of the consent judgment clearly showed the father's intent to provide for the children's support and education after his death.

6. **Judgments § 10; Parent and Child § 7— daughter's right to support and education under father's consent judgment — marriage of the daughter**

    Under the terms of a consent judgment wherein a father agreed (1) to support the children of a prior marriage until they reached the age of eighteen and (2) to provide the children with a four-year college education at the college of his choice, a daughter who married prior to her eighteenth birthday did not forfeit her right under the judgment to receive support and a college education.

7. **Parent and Child § 7— son's right to education expenses under father's consent judgment**

    Under the terms of a consent judgment wherein a father agreed to provide his children of a prior marriage with a four-year college education at the college of his choice, a son who refused to attend the college of his father's choice did not forfeit his right to recover under the judgment for the expenses of his college education, where (1) the father not only selected a college for the son but also required that the son reside with him and his second wife while the son attended the college; (2) the son's living conditions with his father and stepmother were those of harassment, humiliation, and general nagging; (3) the son, unable to continue satisfactorily his education while living in the strained environment of his father's home, subsequently withdrew from the college; and (4) the son entered a college in another state and completed his education without his father's support.

**8. Contracts § 20— performance of contract — excuse of nonperformance**

   One who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance.

ON *certiorari* to review the decision of the Court of Appeals reported in 8 N. C. App. 458, 174 S.E. 2d 646.

On 3 December 1934 Dr. Walter W. Sawyer, Jr. (Dr. Sawyer) was married to his first wife, Miriam Sherlock (Miriam). To this union were born two children: a son, Walter Wesley Sawyer III (Walter), on 24 April 1944, and a daughter, Sarah Margaret (Sarah), on 13 September 1949. In 1951 Dr. Sawyer and Miriam entered into a separation agreement. They were divorced on 27 October 1954. The separation agreement provided for Dr. Sawyer to pay monthly support for the benefit of his children until they reached the age of 18. The agreement also provided that Dr. Sawyer would procure and keep in force policies of endowment life insurance payable to each child at age 18, the proceeds to be used to fund a college education for each child.

On 27 October 1954 Dr. Sawyer married his second wife, Gwendolyn B. Sawyer (Gwendolyn). Later, he defaulted in some of his payments under the separation agreement, and suit was instituted in the Superior Court of Camden County to collect the arrearages of $4,500. On 3 March 1958 a consent judgment was entered before Judge Henry L. Stevens, Jr., settling the arrearages for $1,600. The consent judgment, among other things, provided:

   "It is further ORDERED that within three days following the execution of this judgment the said Walter W. Sawyer shall forward to the said Miriam Sawyer King, at an address furnished by her attorneys, LeRoy & Goodwin, a check for $100 for the use and support of the two said minor children for the month of February 1958, and on or prior to the 10th day of each succeeding month through the calendar year 1958, shall in like manner forward said plaintiff, Miriam Sawyer King, and for such purpose, an additional check in the sum of $100; that beginning in January 1959, and extending through December 1959, the said defendant will pay the said plaintiff for like purpose the sum of $125 per month on or before the 10th day of each month; that

beginning in January 1960, the said defendant will pay the said plaintiff, for like purpose the sum of $150 per month on or before the 10th day of each month through the calendar year 1960; that beginning in January 1961, the said defendant will pay the said plaintiff for like purpose the sum of $200 per month on or before the 10th day of each succeeding month, *which said payment shall continue monthly until the eldest child reaches the age of 18 years, at which time said payments shall be cut in half and shall continue until the younger of said children reaches the age of 18 years, at which time all such payments due hereunder shall cease.*

"It is further ORDERED that the defendant, Walter W. Sawyer, Jr., *assume the burden of a four year college education for each of said children at the college of his choosing* and that *(sic)* such time he shall deal directly with said minor children in supplying the necessary funds for their scholastic requirements, but in the event at any period during said four years of such college education aforementioned, either or both of said children should refuse to go or to continue with college at any interim period, or should either or both of said children fail to pass their work, or by misconduct be refused by the college authorities re-entry thereto, then, in such event, the said defendant is relieved of further educational responsibilities." (Emphasis added.)

The consent judgment further provided that a prior conveyance of a farm in Camden County by Dr. Sawyer to the defendant be set aside, and that Dr. Sawyer would not mortgage or dispose of this farm until the youngest child became 18, unless he gave bond or retained sufficient property to satisfy the support provisions of the judgment.

Walter graduated from high school in the spring of 1962 and entered Old Dominion College, the college of Dr. Sawyer's choice, in the fall of 1962. He voluntarily withdrew that same fall and did not thereafter attend a college chosen by his father. He did attend St. Mary's College and Towson State College, from which he graduated in 1967.

Dr. Sawyer died on 8 October 1965. Prior to his death he made the support payments as required by the 1958 consent

judgment. It was stipulated that Sarah did not receive any support from Dr. Sawyer or his estate from the date of his death until she became 18 on 13 September 1967. Sarah graduated from high school in 1967 and shortly thereafter married.

It was also stipulated that neither of Dr. Sawyer's children received any money from him for their college education with the exception of the money paid for the benefit of Walter during the time he lived in his father's home in Virginia and attended Old Dominion College.

It was further stipulated, "that the Will of Walter Wesley Sawyer, Jr., has been duly filed and probated by the Clerk of Superior Court of Camden County, North Carolina, and that H. T. Mullen, Jr., has been duly qualified and is acting in his fiduciary capacity as Administrator, C.T.A. That there is no personal property of the estate of Walter Wesley Sawyer, Jr. to be found in the State of North Carolina."

Following Mullen's qualification as Administrator, c.t.a., on 9 June 1969, two claims were filed with him by Walter and Sarah. Walter asserted that his father's estate owed him the sum of $9,100 for educational expenses incurred. Sarah asserted that Dr. Sawyer's estate owed her $2,700, with interest, for "delinquent child support payments" and $16,000 for "future college education expenses." These claims were allowed by the Administrator, c.t.a. In order to pay these claims, a proceeding was instituted by the Administrator, c.t.a., for the purpose of selling certain real estate devised to the defendant herein by the will of Dr. Sawyer.

Other facts germane to the decision are set forth in the opinion.

By consent, the matter was transferred to the civil issue docket of the Superior Court of Camden County. The parties waived trial by jury, and the case was heard by Judge Rudolph Mintz at the December 1969 Session. He found the North Carolina real estate to have a fair market value of $60,250 and ordered its sale. His judgment ordered payment of $2,400 to Sarah for support payments incurred after Dr. Sawyer's death and $12,000 to her (of the $16,000 requested) for the payment of her college expenses at Old Dominion College, this payment conditioned upon her actually attending that college. The judg-

ment further provided that Walter be paid the sum of $8,950 for expenses incurred in obtaining his college education.

From this judgment the defendant appealed to the Court of Appeals. In an opinion by Chief Judge Mallard, concurred in by Judges Morris and Graham, the Court of Appeals reversed the judgment entered by Judge Mintz.

Prior to the filing of the petition for writ of *certiorari,* H. T. Mullen, Jr., Administrator, c.t.a., of the estate of Dr. Sawyer, resigned. The Camden County Clerk of Superior Court thereupon appointed Grafton G. Beaman, attorney, as substitute Administrator, c.t.a., of the estate of Dr. Sawyer. Beaman duly qualified on 16 July 1970 and filed petition for writ of *certiorari,* which we allowed on 1 September 1970.

*Small, Small & Watts by Thomas S. Watts for petitioner appellant.*

*Forrest V. Dunstan for defendant appellee.*

MOORE, Justice.

[1]   At common law the father's duty to support his children did not survive the father's death. *Gray v. Gray,* 273 N.C. 319, 160 S.E. 2d 1. This rule obtained even though the children were minors. *Elliott v. Elliott,* 235 N.C. 153, 69 S.E. 2d 224. As was said in *Layton v. Layton,* 263 N.C. 453, 139 S.E. 2d 732:

> " 'The relationship of parent and child is a status, and not a property right.' 67 C.J.S., Parent and Child, § 2, p. 628. At common law it is the duty of a father to support his minor children. *Elliott v. Elliott,* 235 N.C. 153, 69 S.E. 2d 224; *Green v. Green,* 210 N.C. 147, 185 S.E. 651; *Blades v. Szatai,* 135 A. 841, 50 A.L.R. 232. . . . The common law obligation of a father to support his child is not 'a debt' in the legal sense, but an obligation imposed by law. *Ritchie v. White,* 225 N.C. 450, 35 S.E. 2d 414. It is not a property right of the child but is a personal duty of the father which is *terminated by his death. Elliott v. Elliott, supra; Lee v. Coffield,* 245 N.C. 570, 96 S.E. 2d 726; *Blades v. Szatai, supra. These* common law principles have not been abrogated or modified by statute and are in full force and effect in this jurisdiction. G.S. 4-1; *Elliott v. Elliott, supra.*"

[2]   The support of a child by a parent may be the subject of a contract, and the father may by contract create an obliga-

tion to support his child which will survive his death and constitute a charge against his estate, in which case the ordinary rules of contract law are applicable. *Layton v. Layton, supra; Church v. Hancock,* 261 N.C. 764, 136 S.E. 2d 81; *Stone v. Bayley,* 75 Wash. 184, 134 P. 820; 6 Strong's N. C. Index 2d, Parent and Child § 7, p. 168.

[3] A consent judgment is a contract between the parties entered upon the records of the court with the approval and sanction of a court of competent jurisdiction. It is construed as any other contract. *Stanley v. Cox,* 253 N.C. 620, 117 S.E. 2d 826; 5 Strong's N.C. Index 2d, Judgments § 10.

[4, 5] "The heart of a contract is the intention of the parties, which is ascertained by the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time." *Pike v. Trust Co.,* 274 N.C. 1, 161 S.E. 2d 453. In the present case we must examine the contract created by the consent judgment to determine whether or not Dr. Sawyer intended to create a debt in a legal sense which would survive his death and become an obligation of his estate. The defendant contends that under the decision in *Layton v. Layton, supra,* the contract entered into by the parties did not create such an obligation.

In *Layton* the wife's action for alimony and child support was terminated by a consent judgment in which the husband agreed to pay $50 a month for the support of two children and to provide a dwelling house. In holding that this consent judgment did not manifest an intention that the obligation survive the husband's death, this Court said:

"... It is clear that the primary purpose of the consent order was to fix the amount of support. ... There is no provision, express or clearly implied, that the payments were to be continued after defendant's death. The order creates no lien upon any of E. C. Layton's property. There is no special consideration running to him as was the case in *Church v. Hancock, supra* [261 N.C. 764, 136 S.E. 2d 81]. The contract is silent as to the time of termination of support payments. ... It is clearly the intention of the father to meet his common law obligation to his children and nothing more, and it was the intent and purpose of plaintiff and defendant that this obligation be fixed and certain as to

amount. There is nothing in the contract which imposes upon E. C. Layton any obligation or debt over and beyond that required and limited by the common law principles stated above."

In *Layton* the Court does set out certain provisions or conditions in the contract which can be considered in determining the intent. These are: (1) Does the language create a lien upon the father's property? (2) Is there a special consideration in favor of the father? (3) Is there a specific termination time for the payments? (4) Is there an obligation in excess of the common law duty to support? These elements in themselves may not be conclusive, but in the present case they may assist in determining the intent of Dr. Sawyer at the time he signed the consent judgment.

[5] Applying the criteria of *Layton,* the consent judgment makes it clear that Dr. Sawyer intended the Camden County farm to be security for the support payments and that these payments were to terminate at age 18—a definite time. There was a "special consideration" for the obligations which Dr. Sawyer assumed in the consent judgment—his monthly payments were reduced, and an arrearage of $4,800 was cancelled for $1,600. The consent judgment obligated Dr. Sawyer to provide each child a four-year college education without limit as to time or amount. This clearly exceeded the requirements of the common law. *Church v. Hancock, supra; Lee v. Coffield,* 245 N.C. 570, 96 S.E. 2d 726. Considering these and other provisions of the consent judgment, we hold that Judge Mintz correctly decided that Dr. Sawyer intended his agreement to support Sarah and provide Sarah and Walter with a four-year college education should survive his death and become an obligation of his estate.

[6] Defendant contends, however, that Sarah forfeited her right to support and to a college education by marrying. Sarah testified that she never enrolled at any college or university because she was "financially unable to attend." She further testified: "I want to go to college now because . . . I would like to better myself as a person and should anything happen to my husband, college would insure me a job to support myself and my son." It was stipulated by counsel that Sarah had never received any money for her college education. The consent judgment contained

no provision that Sarah's support or education would be affected by her marriage.

In *Church v. Hancock, supra,* the husband and wife entered into a separation agreement. In consideration of her relinquishment of certain rents, he agreed to pay her a monthly sum for the support of herself and the children of the marriage. The agreement provided for a reduction if the wife remarried or in the event of the death of a child. Otherwise, the payments continued to a specific date. One of the children married. The Court held that the marriage of the child did not reduce the payments, stating:

> " . . . The terms of the contract under consideration are plain and unambiguous. The parties provided for those contingencies which would, upon occurrence, reduce Charles H. Hancock's stipulated monthly payments. They were the plaintiff's remarriage and the death of a child or children. The separation agreement contained no provision for a reduction in the event of a child's marriage. . . . "

While *Church* referred only to payments for support, the reasoning applies equally to the obligation to provide for a college education. In the present case, Dr. Sawyer agreed to assume the burden of a four-year college education for each of his children without any proviso as to marriage. We hold that Sarah's marriage did not relieve Dr. Sawyer's estate of the obligation to support her until she arrived at the age of 18 or of the obligation to provide her with a four-year college education.

[7]    Defendant further contends that Walter forfeited his right to a college education by refusing to attend the college of his father's choice, as provided for in the consent judgment. His father selected Old Dominion in Norfolk, Virginia as the college for Walter to attend, but added an additional requirement, not provided for in the consent judgment, that Walter reside in the home of Dr. Sawyer. Walter entered Old Dominion in the fall of 1962. He testified he was apprehensive about living in his father's house since he felt he and his sister had not been treated properly when they last visited his father and stepmother in 1958. However, he and his father decided "to give it a try, and if it didn't work out, other provisions would be made." From Walter's standpoint, it did not work out. He testified in substance that his living conditions with his father and stepmother

were ones of harassment, humiliation, and general nagging. His stepmother constantly referred to the financial sacrifices they were making to send him to college. She nagged him about lack of social graces and manners as well as inadequate background and training which his mother had given him. On one occasion he had a severe toothache and on visiting the dentist found numerous cavities which required attention. He was refused further dental care because his stepmother said this condition was due to his or his mother's neglect. Every time he violated one of the rules of conduct which his stepmother had laid down for him, she took 25¢ out of his weekly allowance of $3, which was provided him for lunches and other incidentals. If he used the wrong stairway, stepped on the living room rug, forgot to take out the garbage, etc., he was fined a quarter. He was not allowed to go to the ice box between meals, and he lived in a bedroom which had been fixed in the attic. He was not allowed to use the main stairway, but had to use the maid's entrance and the back way. Because of these conditions, Walter testified that he was unable to do college work and withdrew from Old Dominion about Thanksgiving in 1962. He later enrolled at St. Mary's College (a junior college) and after two and one-half years graduated from there and entered Towson State College in Baltimore as a junior. In 1967 he graduated from Towson with an A.B. degree. He received no financial support of any kind from his father after leaving Old Dominion.

Judge Mintz found as facts:

"13. Said son had not visited in the home of his father and stepmother since 1957, prior to his enrollment in college in 1962. The lack of communication over the years between the son, Dr. Sawyer and Gwendolyn combined with the constant association during the period he attended Old Dominion College [and] resulted in a relationship between the individuals that was incompatible. Said son could not reasonably have been expected to procure a satisfactory college education while living in the strained environment produced by this situation. It was reasonably necessary for the son to extricate himself from this environment and to seek enrollment in a college where this environment did not exist. It was reasonable for the son to enroll in another college where the cost would be reasonable and comparable to the cost of the college education contemplated at the time

of the consent judgment. The withdrawal of said son from Old Dominion College did not constitute an abandonment or waiver of his rights to a college education pursuant to the consent judgment.

"14. Except for certain visitation rights of Dr. Sawyer with his son, the custody of the son was awarded by the separation agreement and the consent judgment to the mother and neither the consent judgment nor any other instrument required the son to live with Dr. Sawyer in order to obtain a college education. Requiring the son to submit to this additional condition was not contemplated at the time of the consent judgment by any party to that proceeding. By this additional condition Dr. Sawyer unilaterally altered the terms and provisions of said consent judgment; thus forcing his son to seek a college education at another, comparable institution."

Upon waiver of jury trial, the court's findings of fact, if supported by competent evidence, have the force and effect of a jury verdict. *MacKay v. McIntosh*, 270 N.C. 69, 153 S.E. 2d 800; *Priddy v. Lumber Co.*, 258 N.C. 653, 129 S.E. 2d 256; *Insurance Co. v. Lambeth*, 250 N.C. 1, 108 S.E. 2d 36.

There was ample competent evidence to support Judge Mintz's findings that the requirement that Walter live in the Sawyer home while he was attending college, and the "strained environment" created therein by the attitude and conduct of Dr. Sawyer and his wife, forced Walter to seek his college education at another institution. Judge Mintz then properly concluded that Walter did not abandon or waive his right to a college education by leaving Old Dominion.

[8] "It is a salutary rule of law that one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance." *Harwood v. Shoe*, 141 N.C. 161, 163, 53 S.E. 616. Accord: *Bank v. Supply Co.*, 226 N.C. 416, 38 S.E. 2d 503; *Morrison v. Walker*, 179 N.C. 587, 103 S.E. 139; *Whitlock v. Lumber Co.*, 145 N.C. 120, 58 S.E. 909; 2 Strong's N. C. Index 2d, Contracts § 20.

5 Williston on Contracts, 3d ed., § 667A, p. 233, states the rule:

"It is as effective an excuse of performance of a condition that the promisor has hindered performance as that he

has actually prevented it. Although the early decisions are to the contrary, it seems evident that the same principle of justice which precludes a promisor from taking advantage of a condition, the performance of which he himself has prevented, precludes him also from setting up a condition the performance of which he has made more difficult."

See 17 Am. Jur. 2d, Contracts § 427, p. 882; Restatement, Contracts § 295 (1932).

The indignities heaped upon Walter in the Sawyer household, and the utter disregard for his feelings, made it more difficult if not impossible for him to do satisfactory college work at Old Dominion. His leaving was justified and in no way affected his right to reasonable payment for a four-year college education from his father's estate.

For the reasons stated above, the decision of the Court of Appeals is reversed, and the case is remanded to that court with directions to enter a judgment affirming the judgment of the Superior Court.

Reversed and Remanded.