KATHLEEN BRADSHAW, INDIVIDUALLY AND KATHLEEN BRADSHAW, GUARDIAN OF CHARLENE SMITH, MINOR v. YVONNE S. SMITH, ADMINISTRATRIX OF THE ESTATE OF CHARLES EMERSON SMITH, DECEASED

No. 804SC192

(Filed 16 September 1980)

**Husband and Wife § 11.2; Parent and Child § 7.1— separation agreement – support provisions not affected by death of supporting parent**

Absent some indication of a contrary intent, where a valid separation agreement requires the father to make child support payments, states terminating contingencies, and is silent as to the effect of the father's death, his

estate is bound to provide support payments according to the terms of the agreement; therefore, the deed of separation in this case created an obligation to furnish child support which survived decedent's death and became an obligation of his estate where the agreement provided that child support would continue until the child reached eighteen years of age, completed high school, or discontinued her high school education, whichever event happened last; provided that decedent would pay for hospital insurance for the child; and did not make a specific provision for payments in case of decedent's death.

APPEAL by defendant from *Llewellyn, Judge.* Judgment entered 1 October 1979 in Superior Court, SAMPSON County. Heard in the Court of Appeals 26 August 1980.

On 28 December 1978 plaintiff brought this action against the defendant, the administratrix of decedent's estate, alleging that the estate was liable for child support payments due under the separation agreement. Defendant denied such liability contending that the obligation terminated at decedent's death. Paragraph Three of the separation agreement provided that decedent would pay to plaintiff child support in the sum of $20 per week for the use and benefit of his minor child until such child reached "the age of eighteen (18) years or if still in high school, until said child completes its high school education or discontinues its high school education, whichever of the latter two events happens first ... ." In Paragraph Four, decedent also agreed to provide hospital insurance for the child for the same period of time. The agreement was silent as to the effect of decedent's death upon his duty to provide child support and hospital insurance. After decedent's death, defendant refused plaintiff's demands for child support.

The parties waived jury trial and stipulated to all facts which were substantially as set out hereinabove.

The court found as facts that:

20. The Court finds that there is no provision in the separation agreement wherein the actual death of Charles Emerson Smith is addressed, that is one that would be set forth in the event of the death of Charles Emerson Smith as to an obligation of his estate to support his children.

21. The separation agreement does set forth a time when the support obligation would terminate, to wit: upon the youngest child obtaining the age of eighteen years of age or completes her high school education or discontinues her high school education, whichever of the latter two events happens first.

22. Upon reading of the separation agreement from start to finish and taking the document from all four corners, the Court finds that the intent of the party was that the obligation of Charles Emerson Smith to support his child would terminate in accordance with the provisions contained in Paragraph No. 3 of said separation agreement.

Upon these findings the trial judge concluded that decedent's estate was obligated to comply with Paragraph Three of the separation agreement. From these findings of fact and conclusions of law, defendant appeals.

*Paderick, Warrick, Johnson & Parsons, by Clifton W. Paderick, for plaintiff-appellee.*

*Holland, Poole & Newman, by B. L. Poole, for defendant-appellant.*

MARTIN (Robert M.), Judge.

The sole issue before this Court is whether the deed of separation created an obligation to furnish child support which survived decedent's death and became an obligation of his estate. An examination of prior North Carolina case law answers this issue.

Although the common law duty of a parent to support his child terminates at the parent's death, a parent can bind his estate by contract to support the child after his death. The question of whether a contract operates to so obligate a parent's estate is answered by determining the intent of the parties to the contract. *Mullen v. Sawyer,* 277 N.C. 623, 178 S.E. 2d 425 (1971); *Layton v. Layton,* 263 N.C. 453, 139 S.E. 2d 732 (1965).

In determining the intent of the parties with regard to this issue, three prior North Carolina cases provide guidance.

In *Church v. Hancock*, 261 N.C. 764, 136 S.E. 2d 81 (1964), Justice Sharp (later Chief Justice Sharp) stated that where the parties to a separation agreement provide for contingencies which will reduce the amount of support payments, the court will not rewrite the contract for them. In *Church*, the separation agreement provided that the father would pay support for the wife and two minor children. Under the agreement, if the wife remarried or if a child died, payments would be reduced by certain amounts. When one of the minor children married, the father contended that the amount of the support payments should be reduced. The court held that ordinary rules governing the interpretation of contracts applied and that the contractual provisions regarding termination of the duty of support were clear and unambiguous. The marriage of the minor child was not a terminating contingency under the agreement.

*Layton v. Layton, supra,* involved a consent order providing for support of decedent's two minor children. After determining that the primary purpose of the parties in consenting to the order was to fix the amount of support payments (which had been contested), the court held that the father's intent was merely to meet his common law obligations to his children and nothing more. He did not intend to create a debt which survived his death. Appellant contends that *Layton* supports her position that Smith's estate is not bound by the separation agreement. However, *Layton* is distinguishable from the case at bar on its facts because the consent order in *Layton* did not state when the duty to support would terminate and the agreement in the case *sub judice* did.

The case of *Mullen v. Sawyer, supra,* which was not cited by plaintiff or defendant, concerned a similar factual situation. In *Mullen* the father agreed to make certain support payments for his minor children in a consent order which stated:

> *said payment shall continue monthly until the eldest child reaches the age of 18 years, at which time said payments*

*shall be cut in half and shall continue until the younger of said children reaches the age of 18 years, at which time all such payments due hereunder shall cease.*

The father also agreed to *"assume the burden of a four year college education for each of said children at the college of his choosing ..."* and upon the occurrence of certain conditions that obligation was to terminate. *Id.* at 626, 178 S.E. 2d at 426-427. As in the case at bar, the consent order was silent regarding the effect of the father's death on his obligation to support. The court held that the father's estate was obligated to make support payments coming due after the father's death to the minor children and to pay their future college expenses. In reaching its decision the court determined that such was the parties' intent in consenting to the order. The court examined *Layton, supra,* and isolated from that opinion four factors to be considered in determining intent from the contract. They are as follows:

(1) Does the language create a lien upon the father's property? (2) Is there a special consideration in favor of the father? (3) Is there a specific termination time for the payments? (4) Is there an obligation in excess of the common law duty to support? These elements in themselves may not be conclusive, but in the present case they may assist in determining the intent of Dr. Sawyer at the time he signed the consent judgment.

277 N.C at 630, 178 S.E. 2d at 429.

In the case at bar, factors (3) and (4) are met. The agreement states when the payments shall terminate and provides for an obligation in excess of the common law duty to support (to provide hospital insurance for each minor child). Thus it seems clear that when Charles Emerson Smith signed the separation agreement, he intended that his obligation to support his child would continue until she reached eighteen years of age, completed high school, or discontinued her high school education, whichever event happened last. Absent some indication of a contrary intent, where a valid separation agreement requires the father to make child support payments, states terminating

contingencies, and is silent as to the effect of the father's death, his estate is bound to provide support payments according to the terms of the agreement. It appears that the majority of the other jurisdictions that have passed on this issue agree with our holding. *See* Annot., 18 A.L.R. 2d 1126, 1131-1133 (1951).

For the reasons stated above, we affirm the judgment of the superior court.

Affirmed.

Judges VAUGHN and WEBB concur.