John Boyd CHASTAIN, Jr., Administrator of the Estate of Marilyn Gail Chastain, Deceased, Plaintiff,

v.

LITTON SYSTEMS, INC., Defendant.

Grady Allen INGLE, Administrator of the Estate of Lucille C. Ingle, Deceased, Plaintiff,

v.

LITTON SYSTEMS, INC., Defendant.

Nos. B–C–80–267, B–C–80–268.

United States District Court, W. D. North Carolina, Bryson City Division.

Oct. 1, 1981.

Herbert L. Hyde, Asheville, N. C., for plaintiffs.

Landon Roberts, Asheville, N. C., for defendant.

## MEMORANDUM OF DECISION

WOODROW W. JONES, Chief Judge.

The Plaintiffs, John Boyd Chastain, Jr. and Grady Allen Ingle, Administrators of the estates of Marilyn Gail Chastain and Lucille C. Ingle, deceased, respectively, and residents of North Carolina, instituted these diversity actions against the Defendant, Litton Systems, Inc., a Delaware corporation which owns and operates a manufacturing plant in Cherokee County, North Carolina, seeking compensatory and punitive damages under the North Carolina Wrongful Death Statute G.S. 28A–18–2. These lawsuits arise from a motor vehicle accident on December 21, 1979 in which a van driven by George Beck, the Defendant's employee, collided with an automobile occupied by Marilyn Gail Chastain, as driver, and Lucille C. Ingle, as passenger. Both women died as a result of the injuries sustained in said collision.

These matters are now before the Court upon the Defendant's motions to dismiss pursuant to Rule 12(b) and for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. A hearing on these motions was held by the Court in Bryson City on July 20, 1981. For the purposes of this opinion the Court will consider the two cases together. After a careful consideration of the pleadings, affidavits, answers to interrogatories, briefs and argument of counsel the Court now enters its findings and conclusions.

The following facts are not in dispute. The Defendant, Litton Systems, Inc., hereinafter Litton, owns and operates a manufacturing plant in Cherokee County, North Carolina and is not engaged in the manufacture, sale or distribution of alcohol for pecuniary profit or for any other reason. On December 21, 1979, Litton hosted on its Cherokee County premises the annual pre-Christmas party for 861 of its employees called "Rebellion Day." Employees were to check in at or after 8:00 a. m., were to clock out at any time thereafter without performing any work, and were paid for a full eight hours of work. The party schedule consisted of music, snacks, and non-alcoholic beverages served from 8:00 a. m. to 10:00 a. m. and a luncheon served from 10:00 a. m. to 12:00 noon. Litton had its security guards on duty and they were aware of the well established company policy not to allow alcohol beverages on the premises. George Beck, a twenty-five year old male employee of Litton clocked in after 8:00 a. m. and proceeded to the machine shop where someone had spiked the punch with alcoholic beverages and had brought into the machine shop some bottles of whiskey. He began drinking these beverages along with some of the other employees and then clocked out of the plant at 10:00 a. m. At about 10:30 a. m. Beck passed by the plant in his van and was flagged down by a fellow employee, David Taylor, and asked if he needed someone to drive. him home. Beck replied that he was fine and refused an offer to come inside to have a cup of coffee. Thereafter Beck drove away and approximately one hour and twenty minutes later and some distance from the plant ran a red light and struck the automobile occupied by the decedents.[1] Litton admits that the security guards stopped six employees from driving from the plant and had other employees driven home because of their inebriated condition.

---

1. George Beck was convicted in the Criminal Superior Court of Cherokee County on two involuntary manslaughter charges and was given an active sentence of seven to ten years and suspended seven to ten year sentence in the other and, in addition, ordered to pay the sum of $10,000 for the use and benefit of the two minor children of Lucille Ingle.

The Plaintiffs contend that the Defendant was negligent in furnishing or allowing alcohol on its premises and in permitting Beck to become intoxicated and to leave the premises in his van with the Defendant's knowledge of his intoxicated state. They further contend that Litton violated various North Carolina liquor laws and that these violations constitute negligence per se. The Defendant counters by denying that it furnished or allowed alcohol on its premises or that it violated any liquor laws. Further, it argues that even if the Defendant did furnish the alcohol, it is not liable in common law negligence for the wrongful acts of Beck.

■ The Court has considered matters outside the pleadings and therefore will treat the Defendant's Rule 12(b) motion to dismiss for failure to state a claim as a motion for summary judgment under Rule 56, F.R.C.P. *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), F.R.C.P. Even if certain facts are in dispute, summary judgment is appropriate if, considering the disputed facts in the light most favorable to the party opposing the motion, the moving party is entitled to judgment as a matter of law. *Time, Inc. v. McLaney*, 406 F.2d 565 (5th Cir. 1969); *Jennings v. Edwards*, 454 F.Supp. 770 (M.D.N.C.1978); *Wilson v. Continental Group, Inc.*, 451 F.Supp. 1 (M.D.N.C.1978).

The issue is whether a social host who gratuitously furnishes alcohol to an able-bodied adult is liable for personal injuries and death inflicted on an innocent third party by that intoxicated adult.

This is a case of first impression in North Carolina. North Carolina does not have a dramshop act[2] and the common law principles that have not been abrogated or repealed by statute are in full force and effect in this State. N.C.G.S. § 4–1; *Mullen v. Sawyer*, 277 N.C. 623, 178 S.E.2d 425 (1971).

At common law it is not a tort to sell or give intoxicating liquor to an able-bodied person and there is no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person drinking the liquor. The reason for the rule is that the consumption of the liquor, and not the furnishing of it, is the proximate cause of the injury. *Alsup v. Garvin-Wienke, Inc.*, 579 F.2d 461 (8th Cir. 1978); *Megge v. United States*, 344 F.2d 31 (6th Cir. 1965); 45 Am.Jur., Intox. Liquors § 553.

The Court in *Megge v. United States, supra*, stated:

> The common law knows no right of action against a seller of intoxicating liquors, as such, for "causing" intoxication of the person whose negligence or wilful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from [dramshop] statute) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor.
>
> *State For Use of Joyce v. Hatfield*, 197 Md. 249, 78 A.2d 754 (1951).

Responding to the argument to create a common law duty on social hosts furnished alcohol, the Court, in *Cartwright v. Hyatt Corp.*, 460 F.Supp. 80 (D.D.C.1978), stated

> ... There is now no jurisdiction in the United States where, absent an explicit civil damage or "Dram Shop Act," a social host is held liable for having served liquor to an intoxicated adult who, as a result, causes harm to a third person. Valid policy considerations exist on both sides of this issue, and the Court is not prepared to adopt for the District of Columbia a rule not judicially imposed by any other court in any other jurisdiction.
>
> If such a rule is to become a part of District of Columbia law, the decision

---

**2.** The legislatures of various states have enacted statutes, commonly known as civil damage or dramshop acts, which give a right of action to persons injured by an intoxicated person against the person selling or furnishing the liquor which caused the intoxication. See 45 Am.Jur.2d, Intox. Liquors § 361.

should appropriately be made by the legislature—as it has been done wherever the rule has been adopted. *Id.* at 82.

In the light most favorable to the Plaintiffs, the evidence shows that Litton through its employees furnished alcohol to Beck, allowed him to become intoxicated and knowingly permitted him to leave in his van in the intoxicated state. Thereafter, within one hour and twenty minutes and several miles from Litton's plant, Beck while operating his own motor vehicle collided with a motor vehicle occupied by Plaintiffs' decedents causing injuries from which they died.

There are no North Carolina cases on the point in question, but the Plaintiffs cite and rely upon a number of cases which they say support their contentions. Most of these cases are based upon recognized principles of law such as the duties owed by common carriers to their passengers and owners of premises to their customers or invitees. One such case is the recent Supreme Court decision in *Foster v. Winston Salem Joint Venture, et al.,* 303 N.C. 636, 281 S.E.2d 36 (1981) which seems to go further than any other North Carolina case on the question of foreseeability. But *Foster* is based upon the well recognized principle of law of the duty owed by the owners of business premises to their customers or invitees. The Court held in *Foster* that a jury question arises where the plaintiff, a customer of the defendants, owners and operators of the businesses and the shopping center, was criminally assaulted by third parties in the defendant's parking lot when there had been thirty-one similar incidents occurring in the shopping center within the year preceding the attack on plaintiff and the defendants had notice of such incidents. The Court held that "a jury could reasonably find that by providing only one guard to patrol a large parking area during the busy shopping period five days before Christmas, defendants breached their duty to exercise reasonable care to maintain the shopping center premises in such a manner that they might be used safely by the customers invited thereon."

█ In the absence of a controlling North Carolina statute, or case, this Court will follow the common law rule and concludes that the Defendant Litton as a social host is not liable for the personal injuries and deaths of the Plaintiffs' intestates caused by the intoxicated George Beck to whom Litton furnished alcoholic beverages. The proximate cause of the injuries and deaths was the voluntary consumption of alcohol by an able-bodied adult, and not the furnishing of the alcohol by the Defendant.

The Plaintiffs further contend that the Defendant violated N.C.G.S. § 18A–3(a) and § 18A–30(5)(d), alcohol control statutes, by furnishing alcoholic beverages in an unauthorized place, its manufacturing plant, and that these violations constitute negligence per se. N.C.G.S. § 18A–3 states, "No person shall . . . sell . . . deliver, furnish, purchase or possess any intoxicating liquor except as authorized by this chapter . . ." and N.C.G.S. § 18A–30(5)(d) makes it illegal for "any person, association or corporation to permit any alcoholic beverages to be possessed or consumed upon any premises not authorized by this chapter."

█ Considering the evidence in the light most favorable to the Plaintiffs, it is clear that the Defendant has not violated these statutes. For purposes of this motion, Litton is at worst a social host providing its employees with Christmas cheer and hospitality. There is no allegation or evidence that Litton was in the business to sell or distribute alcoholic beverages for pecuniary profit. The Court finds that Litton's activities as a social host come within N.C.G.S. § 18A–30(1) which in relevant part reads

Possession and Consumption of Alcoholic Beverages at Designated Places.

(1) Residence and Related Places—. . . A person may also possess and consume said alcoholic beverages, but not in view of the general public, on any private property not primarily engaged in commercial entertainment and not open to the general public at the time, when such person, association, or corporation has obtained express permission of the owner or person lawfully in possession of said

property, and when said alcoholic beverages are consumed by said person, his family, his bona fide guest or bona fide guests of the association or corporation . . .

Litton did not violate the North Carolina alcohol control statutes and thus there was no negligence per se.

 Furthermore, even assuming arguendo that Litton did violate the statutes and that the violations were negligence per se, the Plaintiffs must still show that the violation of the statutes was the proximate cause of the injury. *Lutz Industries v. Dixie Home Store*, 242 N.C. 332, 88 S.E.2d 333 (1955); *Ward v. Swimming Club*, 27 N.C. App. 218, 219 S.E.2d 73 (1975). Under the common law rule, however, the furnishing of alcoholic beverages is not the proximate cause of the later injury and, therefore, the Plaintiffs could not recover under negligence per se. See *Keaton v. Kroger*, 143 Ga.App. 23, 237 S.E.2d 443 (1977).

Finally, the Court finds that the Defendant also is not liable under the doctrine of *respondeat superior.* The employer is liable for the negligent or willful acts or omissions of his employee while acting as such and within the scope of his employment. *Wegner v. Delicatessen*, 270 N.C. 62, 153 S.E.2d 804 (1967). It is elementary that an employer is not liable for injury due to the negligent or willful acts or omissions of his employee when the employee has departed from the course of his employment and embarked upon a mission or frolic of his own. *Duckworth v. Metcalf*, 268 N.C. 340, 150 S.E.2d 485 (1966); *Travis v. Duckworth*, 237 N.C. 471, 75 S.E.2d 309 (1953). Although the Defendant paid Beck for eight hours work on December 21, 1979, Beck performed no work on that day because of the "Rebellion Day" party. He clocked out of Litton's employment to begin the Christmas holidays, left Litton's premises, and one hour and twenty minutes later struck the decedents' automobile. Litton is not liable for its employee's acts after he has clocked out, is off their premises, and is not in the scope of his employment.

The Plaintiffs cite in their briefs the provision in the North Carolina Constitution, Art. 1, Section 18, and the cases decided thereunder, that "for every wrong a legal remedy is provided." The Plaintiffs are not without a remedy for the wrong inflicted by George Beck. As set forth in a footnote herein Beck was convicted of two counts of involuntary manslaughter in the Superior Court of Cherokee County and given an active prison sentence of from seven to ten years on one count and a seven to ten year sentence on the other count which was suspended upon the payment of $10,000 for the benefit of the children of Lucille Ingle. In addition, the Plaintiffs would have causes of action against Beck for damages for wrongful death. In fact the Defendant alleges that such actions have already been filed and a recovery had.

The Court concludes that the Defendant is entitled to a judgment as a matter of law dismissing the Plaintiffs' actions and the motions for summary judgment will be granted. A judgment dismissing the action will be entered in each case.