REBECCA FOARD v. WAYNE JARMAN, M.D.

No. 223A89

(Filed 18 January 1990)

1. **Physicians, Surgeons, and Allied Professions § 17.1 (NCI3d) — informed consent — summary judgment for surgeon**

   The trial court properly entered summary judgment for defendant surgeon on the issue of plaintiff's informed consent to gastroplasty surgery where opinion testimony by another surgeon and by defendant that defendant's treatment of plaintiff satisfied the applicable standard of care was sufficient to encompass the issue of informed consent and to satisfy the requirements of N.C.G.S. § 90-21.13(a)(1); and the record established without contradiction that defendant discussed the gastroplasty procedure generally with plaintiff and provided her with written information on the surgery and its risks, and that plaintiff did in fact read the information provided and accepted the risks described therein.

   **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 187-192, 194, 195.**

2. **Physicians, Surgeons, and Allied Professions § 17.1 (NCI3d) — informed consent statute — compliance with all subsections not required**

   The informed consent statute, N.C.G.S. § 90-21.13(a), does not require the health care provider to establish compliance with all three subsections; it is sufficient if the provider can demonstrate that no genuine issue of fact exists under subsections (1) and (2).

   **Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 187-192, 194, 195.**

3. **Physicians, Surgeons, and Allied Professions § 17.1 (NCI3d) — informed consent — experience of surgeon**

The informed consent statute imposes no duty on a health care provider to discuss his or her experience, and such a duty will not be imposed in a case where plaintiff's allegations about defendant surgeon's lack of experience in performing gastroplasty surgery are founded on her speculative and erroneous assumptions about the location of defendant's surgical experience.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 187-192, 194, 195.**

APPEAL by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, reported at 93 N.C. App. 515, 378 S.E.2d 571 (1989), affirming in part and vacating in part an order of summary judgment in favor of defendant entered by *Collier, J.*, on 5 January 1988 in Superior Court, IREDELL County. Heard in the Supreme Court 12 December 1989.

*Hall and Brooks, by John E. Hall, William F. Brooks, and W. Andrew Jennings, for plaintiff-appellee.*

*R. C. Carmichael, Jr. for defendant-appellant.*

WHICHARD, Justice.

The sole issue is whether the Court of Appeals erred in holding that the trial court erroneously granted defendant's motion for summary judgment on the issue of whether defendant obtained plaintiff's informed consent before performing surgery upon plaintiff. We hold that defendant made a sufficient showing of informed consent to prevail on summary judgment, and we accordingly reverse the Court of Appeals.

Plaintiff weighed 331 pounds in May 1982 when she consulted defendant about surgical treatments for obesity. She testified on deposition that she had heard of a surgical procedure which enabled people to lose weight, and she consulted defendant to learn whether he could perform the surgery. Defendant discussed with plaintiff gastric reduction or gastroplasty surgery, a technique which uses surgical staples to create a small pouch in the stomach. This limits the amount of food a patient may consume and leads to early satiety or fullness for the patient. On plaintiff's first visit to defend-

ant, he gave her a booklet entitled, "What You and Your Family Should Know about Gastric Operations for the Treatment of Obesity." Defendant asked plaintiff to read the booklet and discuss the operation with her family before seeing him again in two weeks. Plaintiff testified that she read the booklet several times, including the section that discussed the risks posed by the surgery. Plaintiff was undeterred from her initial decision to undergo the gastroplasty surgery despite its attendant risks. Following the gastroplasty, plaintiff became very ill and suffered complications resulting from a perforation in the stomach wall.

N.C.G.S. § 90-21.13(a) provides the standard of care for informed consent causes:

> (a) No recovery shall be allowed against any health care provider upon the grounds that the health care treatment was rendered without the informed consent of the patient or the patient's spouse, parent, guardian, nearest relative or other person authorized to give consent for the patient where:
>
> (1) The action of the health care provider in obtaining the consent of the patient or other person authorized to give consent for the patient was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities; and
>
> (2) A reasonable person, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedures or treatments and of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments which are recognized and followed by other health care providers engaged in the same field of practice in the same or similar communities; or
>
> (3) A reasonable person, under all the surrounding circumstances, would have undergone such treatment or procedure had he been advised by the health care provider in accordance with the provisions of subdivisions (1) and (2) of this subsection.

N.C.G.S. § 90-21.13(a) (1985). To meet this statutory standard, the health care provider must provide the patient with sufficient information about the proposed treatment and its attendant risks to

conform to the customary practice of members of the same profession with similar training and experience situated in the same or similar communities. In addition, the health care provider must impart enough information to permit a reasonable person to gain a "general understanding" of both the treatment or procedure and the "usual and most frequent risks and hazards" associated with the treatment. "The provider may not be held liable, however, if a reasonable person, under the surrounding circumstances, would have undergone the treatment or procedure had he or she been advised in accordance with G.S. 90-21.13(a)(1) and (2). G.S. 90-21.13(a)(3)." *Nelson v. Patrick*, 73 N.C. App. 1, 11, 326 S.E.2d 45, 52 (1985).

In considering whether defendant was entitled to summary judgment on the informed consent claim, we are mindful of the movant's burden of proof at the pretrial stage. Summary judgment is a device

> whereby a party may in effect force his opponent to produce a forecast of evidence which he has available for presentation at trial to support his claim or defense. A party forces his opponent to give this forecast by moving for summary judgment. Moving involves giving a forecast of his own which is sufficient, if considered alone, to compel a verdict or finding in his favor on the claim or defense. In order to compel the opponent's forecast, the movant's forecast, considered alone, must be such as to establish his right to judgment as a matter of law.

*Vassey v. Burch*, 301 N.C. 68, 72, 269 S.E.2d 137, 140 (1980) (quoting 2 McIntosh, N.C. Practice & Procedure § 1660.5 (2d ed. Phillips Supp. 1970)).

[1] Defendant's forecast of evidence included an affidavit from Dr. Walter J. Pories, a general surgeon and chairman of the Department of Surgery at East Carolina University. Dr. Pories stated that he had reviewed plaintiff's hospital records and defendant's office records "regarding and arising out of the gastroplasty surgery" performed by defendant on plaintiff. Dr. Pories stated that he knew

> the standard of care in the practice of general surgery in Statesville, North Carolina, and similar communities in August, 1982, and based upon my review of these records, it is my opinion that the treatment, surgery and procedures used and

performed by Dr. Jarman were in full compliance with and met the standard of care.

Dr. Pories further stated:

> Based upon my examination of the hospital chart and Dr. Jarman's records, and based upon my knowledge of the standard of care in the practice of general surgery in Statesville, North Carolina, and similar communities in August, 1982, it is my opinion that the surgery, care and treatment given the plaintiff by Dr. Jarman was, in every respect, consistent and in accordance with the standard of care.

This testimony neither specifically mentions informed consent nor specifically describes the standard of care for obtaining it. This was the basis on which the Court of Appeals vacated the summary judgment for defendant on the informed consent claim. *Foard v. Jarman*, 93 N.C. App. 515, 523-24, 378 S.E.2d 571, 575 (1989). When this testimony is combined with the remaining forecast of evidence set forth herein, however, it is clear that the measures taken by defendant to inform plaintiff of the risks attendant to her surgery accorded with the standard of care in the community at the time. Dr. Pories testified that defendant's care and treatment of plaintiff conformed with this standard *in every respect*. Plaintiff tendered no evidence to controvert Dr. Pories' sworn statement.

The parties dispute whether defendant verbally discussed the risks of gastroplasty surgery with plaintiff during her office visits. It is undisputed, however, that defendant gave plaintiff a booklet, included in the record as Defendant's Exhibit #1, entitled "What You and Your Family Should Know about Gastric Operations for the Treatment of Obesity." The booklet provides a detailed description of the gastroplasty procedure in readily comprehensible lay terms. The booklet includes diagrams of the anatomical change created by the surgery, and details the lifestyle changes the patient must make to ensure successful weight loss. A section entitled "Potential Risks" reads:

> The "risks" that must be considered before making your decision are based on problems that have occurred in some of the patients that have had surgery before you. They are:
>
> __ Wound infection .......................... 12%
> __ Leaks or perforations causing intestinal
> infection and the need for reoperation ...... 5%
> __ Death ................................... 2%

Defendant also testified that in his opinion his treatment and care of plaintiff was consistent with the standard of practice for general surgery in Iredell County in 1982. Again, while this testimony is conclusory and does not expressly describe the standard of care, it clearly states that the measures defendant took — which are clearly shown by other evidence — complied with the standard, and it stands uncontradicted by any testimony in plaintiff's forecast of evidence.

Plaintiff testified on deposition that during her first visit to defendant's office she and defendant had a general discussion regarding gastroplasty surgery, and defendant demonstrated a facsimile of the procedure with a sponge model. Plaintiff testified she took the booklet provided by defendant home and read it several times, including the section detailing potential risks. Plaintiff agreed that she was aware of the risks set out in the booklet.

We hold that this forecast of evidence, uncontradicted by plaintiff, was sufficient to allow the trial court to enter summary judgment in defendant's favor. No genuine question of material fact exists regarding whether the written information provided plaintiff, which plaintiff read, would allow a reasonable person to gain a general understanding of the surgical procedure and its inherent risks. See N.C.G.S. § 90-21.13(a)(2) (1985). Plaintiff did not forecast evidence that she was incapable of reading or understanding the booklet; instead, she admitted that she did read the booklet and was aware of the risks of infection, perforation, and death. One of the complications listed in the booklet — perforation — did in fact cause plaintiff to suffer complications from the gastroplasty surgery, as described by both Dr. Pories and defendant in their depositions.

After scrutinizing both parties' forecast of evidence, we hold that the testimony of Dr. Pories and defendant, uncontroverted by plaintiff, that defendant's treatment of plaintiff satisfied the standard of care, is sufficient to encompass the issue of informed consent and satisfy the requirements of N.C.G.S. § 90-21.13(a)(1). Because the record establishes without question or contradiction that defendant discussed the procedure generally with the patient and provided her with detailed written information on the surgery and its risks, that plaintiff did in fact read the information provided and accepted the risks described therein, and that defendant's treatment of plaintiff accorded with the standard of care "in every

respect," we hold that the trial court properly entered summary judgment for defendant on the informed consent claim.

[2] In vacating the summary judgment in part, the Court of Appeals stated that "there has been no determination as to what a reasonable person would have done had he been advised in accordance with the statute." *Foard*, 93 N.C. App. at 524, 378 S.E.2d at 575 (referring to N.C.G.S. § 90-21.13(a)(3) ). However, N.C.G.S. § 90-21.13(a) is in the disjunctive and does not require the health care provider to establish compliance with all three subsections; it is sufficient if the provider can demonstrate that no genuine issue of fact exists under subsections (1) and (2). In cases of purely elective surgery, including cosmetic or weight reduction surgery, it would be most difficult for a provider to prove that a reasonable person *"would have undergone* such treatment . . ." upon receipt of proper advice. N.C.G.S. § 90-21.13(a)(3) (emphasis added). The most that can be shown *in* such cases is that some reasonable persons choose to undergo elective surgical procedures when advised in accordance with the statute. Neither the plain language of the statute nor the legislative purpose in enacting it requires that compliance with all three subsections be shown in every case.

[3] Plaintiff alleged in her complaint that defendant misrepresented to her the extent of his experience in performing gastroplasty surgery. She bottomed her claim of fraud on this alleged misrepresentation. The Court of Appeals upheld summary judgment for defendant on the fraud claim on the ground that the claim was barred by the statute of limitations. Plaintiff now argues that defendant's experience in performing this type of operation was material to the issue of informed consent.

Assuming arguendo that the provider's experience is a substantive matter to be covered when the provider obtains the patient's informed consent, the record does not support plaintiff's allegation that defendant "had performed only one other such operation." In her deposition plaintiff stated she had asked defendant if he had done this type of surgery before "and he told me that he had done several and I assumed that he meant there in Statesville at Iredell that he had done more than mine." This assumption was incorrect, as plaintiff's surgery was the first defendant had performed while in private practice in Iredell County. However, as defendant stated in his deposition, without contradiction in the record, his training following medical school involved a five-year

internship and residency in general surgery at North Carolina Baptist Hospital. During this time, he performed approximately thirty gastroplasty surgeries. Initially, defendant assisted in the operation, with his responsibility gradually increasing until the attending surgeon assisted him in performing the operation. Under these facts, we discern no genuine issue regarding defendant's experience which bears on the issue of informed consent. The statute imposes no affirmative duty on the health care provider to discuss his or her experience, and we will not impose such a duty in a case where plaintiff's allegations are founded on her speculative and erroneous assumptions about the location of defendant's surgical experience.

The opinion of the Court of Appeals is reversed as to the sole issue presented by this appeal. The case is remanded to the Court of Appeals for entry of an order affirming the order of summary judgment entered by the trial court.

Reversed and remanded.