NARINDRA NATH HANDA and his wife, YASHULA HANDA, Plaintiffs v. ALBERT R. MUNN, III, M.D. and CAPITAL EYE CENTER, P.A., Defendants

No. COA06-808

(Filed 3 April 2007)

## 1. Medical Malpractice— informed consent to medical treatment—summary judgment

The trial court erred in a medical negligence case by granting defendants' motion for summary judgment based on the issue of lack of informed consent, because: (1) there are genuine issues of material fact in regard to N.C. Gen. Stat. § 90-21.13(a), including whether plaintiff patient had a general understanding of the usual and most frequent risks and hazards inherent in the proposed

procedure; and (2) there is an issue of material fact regarding how the consent was obtained.

## 2. Witnesses— expert qualifications—standard of practice—informed consent

The trial court did not err in a medical negligence case by concluding that plaintiffs' expert witness was qualified to offer opinions regarding the standard of practice for obtaining proper informed consent, because: (1) plaintiffs' expert was a general ophthalmologist and defendant Dr. Munn was a general ophthalmologist and an ophthalmologic surgeon; (2) plaintiffs' expert stated he was familiar with the standard of practice in the southeast, and although this statement could be interpreted as a regional standard and not a community standard, Dr. Munn's expert stated that there is no difference in the standard between Raleigh and Charlotte or any city in between; (3) Dr. Munn's expert stated that the standard is fairly universal within North Carolina for non-emergency treatment; (4) plaintiff's expert was familiar with Greensboro having had two cataract surgeries in Greensboro; (5) given the particular facts of this case and the statement of Dr. Munn's expert, Greensboro is a "similar community" to Raleigh as required by N.C. Gen. Stat. § 90-21.13(a), and plaintiffs' expert was qualified to discuss the standard in Raleigh; and (6) contrary to Dr. Munn's assertion, plaintiffs' expert's professional experience was sufficient.

Appeal by plaintiffs from an order entered 22 March 2006 by Judge Orlando F. Hudson, Jr., in Wake County Superior Court. Heard in the Court of Appeals 7 February 2007.

*Stroud Law Office, PLLC, by W. Randall Stroud, for plaintiff appellants.*

*Yates, McLamb & Weyher, LLP, by John W. Minier and William T. Kesler, Jr., for defendant appellees.*

McCULLOUGH, Judge. .

Plaintiffs appeal from an order granting defendants' motion for summary judgment. We reverse and remand for further proceedings.

## FACTS

Narindra Nath Handa ("Mr. Handa") and Yashula Handa ("Mrs. Handa"), plaintiffs, are husband and wife. Mr. Handa and Mrs. Handa

filed a verified complaint against Albert R. Munn, III, M.D. ("Dr. Munn") and Capital Eye Center, P.A., defendants.

The complaint alleged the following: Beginning in 2000, Mr. Handa was a patient of Dr. Munn and Capital Eye Center. At that time, Mr. Handa's vision in his right eye was correctable to 20/20. Mr. Handa's vision in his left eye was peripheral only. On his own initiative, Dr. Munn recommended implantation of an artificial intraocular lens in Mr. Handa's right eye. Dr. Munn advised Mr. Handa that the surgery was very simple. Prior to the surgery, Mr. Handa could drive a car, read books, play golf, use a computer, and perform routine tasks that are a normal part of life for a person with vision. During the surgery, Dr. Munn discovered that Mr. Handa's posterior lens capsule had been partially removed in a prior cataract surgery. Dr. Munn continued with the surgery and stitched the artificial lens to the back of Mr. Handa's iris. After the surgery, Mr. Handa did not recover his vision. Dr. Munn performed a second surgery on Mr. Handa to remove retained cortical pieces. During this procedure, Dr. Munn removed the artificial lens and ultimately reinserted it. After the second surgery, Mr. Handa's vision did not return to the level of its pre-surgical condition, therefore, Mr. Handa got an appointment to see Dr. Munn. Dr. Munn examined Mr. Handa and told him his retina was detached and arranged an appointment for Mr. Handa to·go to Duke Eye Center. The doctors at Duke Eye Center informed Mr. Handa that he did not have a detached retina, but there was retinal damage, corneal damage, and the intraocular pressure in his right eye had dropped to zero. Mr. Handa began a long course of treatment at Duke Eye Center, and his vision has never returned to normal. Mr. Handa underwent a cornea transplant at Duke, and his vision has improved slightly in the time since the surgery, but he still has no functional vision in his right eye.

Mr. Handa claimed that because of defendants' negligence, he is effectively blind and that he cannot drive a car, play golf, read a book, use a computer, or perform many other ordinary tasks. He claimed his blindness will continue indefinitely. He also asserted that, although he signed an informed consent document, he was physically unable to read it before signing and the action of the health care provider in obtaining the consent was not in accordance with the appropriate standards. Mrs. Handa claimed that she has suffered the burden of significant time and work to care for her blind husband, and has further suffered the loss of companionship, affection, and his household services.

On 29 December 2005, Mr. and Mrs. Handa filed an amended motion for partial summary judgment on the issue of negligence. Defendants filed a motion for partial summary judgment on all liability issues other than plaintiffs' allegations regarding the lack of "informed consent." Both motions were heard and the trial court entered an order granting defendants' motion.

On 10 February 2006, defendant filed a motion for summary judgment on the remaining liability issue of "informed consent." On 22 March 2006, the trial court granted defendants' motion. From this order, plaintiffs appeal.

I.

[1] Plaintiffs contend the trial court erred in granting defendants' motion for summary judgment. Specifically, plaintiffs assert the evidence raised a genuine issue of material fact that defendants failed to obtain Mr. Handa's informed consent before performing elective surgery on Mr. Handa's one good eye. We agree and reverse and remand.

Granting summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "There is no genuine issue of material fact where a party demonstrates that the claimant cannot prove the existence of an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Harrison v. City of Sanford*, 177 N.C. App. 116, 118, 627 S.E.2d 672, 675, *disc. review denied*, 361 N.C. 166, —— S.E.2d —— (2006). On appeal from a grant of summary judgment, this Court· reviews the trial court's decision *de novo. Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 573-74 (1999). " 'The moving party has the burden of establishing the lack of any triable issue,' and '[a]ll inferences of fact from the proof offered at the hearing must be looked at in the light most favorable to the nonmoving party.' " *Nelms v. Davis*, 179 N.C. App. 206, 209, 632 S.E.2d 823, 825 (2006) (citation omitted).

N.C. Gen. Stat. § 90-21.13(a) (2005), which governs informed consent to medical treatment, provides:

(a) No recovery shall be allowed against any health care provider upon the grounds that the health care treatment was rendered without the informed consent of the patient . . . where:

(1) The action of the health care provider in obtaining the consent of the patient . . . was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities; and

(2) A reasonable person, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedures or treatments and of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments which are recognized and followed by other health care providers engaged in the same field of practice in the same or similar communities; or

(3) A reasonable person, under all the surrounding circumstances, would have undergone such treatment or procedure had he been advised by the health care provider in accordance with the provisions of subdivisions (1) and (2) of this subsection.

*Id.*

To meet this statutory standard, the health care provider must provide the patient with sufficient information about the proposed treatment and its attendant risks to conform to the customary practice of members of the same profession with similar training and experience situated in the same or similar communities. In addition, the health care provider must impart enough information to permit a reasonable person to gain a "general understanding" of both the treatment or procedure and the "usual and most frequent risks and hazards" associated with the treatment. "The provider may not be held liable, however, if a reasonable person, under the surrounding circumstances, would have undergone the treatment or procedure had he or she been advised in accordance with G.S. 90-21.13(a)(1) and (2). G.S. 90-21.13(a)(3)."

*Foard v. Jarman*, 326 N.C. 24, 26-27, 387. S.E.2d 162, 164-65 (1990) (citation omitted). "Under subsection (b) [of N.C. Gen. Stat. § 90-21.13], a signed consent . . . is presumed valid only if it 'meets the foregoing standards,' clearly those of subsection (a). The con-

sent form itself is not conclusive." *Estrada v. Jaques*, 70 N.C. App. 627, 645, 321 S.E.2d 240, 251 (1984).

In the instant case, the trial court erred by granting defendants' motion for summary judgment. For example, we believe there are genuine issues of material fact in regard to N.C. Gen. Stat. § 90-21.13(a) which should be decided by the jury. There is an issue as to whether Mr. Handa had a general understanding of the usual and most frequent risks and hazards inherent in the proposed procedure. Mr. Handa testified that Dr. Munn told him that there was "hardly any risk involved" in the surgery, and that Dr. Munn did not describe any of the risks. Although Mr. Handa admits signing a consent form, he testified that he could not read it because his vision was blurry due to procedures that took place in Dr. Munn's office prior to signing the form. Mr. Handa testified that no one in Dr. Munn's office reviewed the consent form with him and no one offered to read it to him. He believed he was only consenting to the surgery by signing the form because he believed the surgery was risk free. In addition, during Mrs. Handa's deposition, she was asked to explain the meeting she and Mr. Handa had with Dr. Munn regarding the surgery. Mrs. Handa testified that Dr. Munn spent no more than five minutes with her and Mr. Handa, and that all Dr. Munn said was that the surgery was a "very simple procedure" and that Mr. Handa "will be very happy with the results, and he can throw away his reading glasses."

In addition, there is an issue of material fact regarding how the consent was obtained. N.C. Gen. Stat. § 90-21.13(b) states that if a consent is evidenced in writing, signed by the patient or other authorized person, and meets the standards found under subsection (a) of N.C. Gen. Stat. § 90-21.13, then the consent is presumed to be valid. N.C. Gen. Stat. § 90-21.13(b). However, "[t]his presumption . . . may be subject to rebuttal . . . [on] proof that such consent was obtained by fraud, deception or misrepresentation of a material fact." N.C. Gen. Stat. § 90-21.13(b). Accordingly, summary judgment was not proper.

**[2]** In his brief on appeal, Dr. Munn asserts several reasons why he believes that plaintiffs' expert witness is not qualified to offer opinions regarding the standard of practice for obtaining proper informed consent. Dr. Munn argues (1) that plaintiffs' expert has no knowledge of Dr. Munn's training and experience, (2) that plaintiffs' expert has no knowledge of the Raleigh medical community, and (3) that plaintiffs' expert's professional experience is deficient. We disagree with Dr. Munn. Plaintiffs' expert is a general ophthalmologist and he understood Dr. Munn to be a general ophthalmologist and an ophthal-

mologic surgeon. In addition, plaintiffs' expert stated he is familiar with the standard of practice in the southeast including Virginia, North Carolina, Georgia and Alabama. Although this could be interpreted as a regional standard and not a community standard, here Dr. Munn's expert stated that there is no difference in the standard between Raleigh and Charlotte or any city in between. Dr. Munn's expert also stated that the standard is fairly universal within North Carolina for non-emergency treatment. Here, plaintiff's expert was familiar with Greensboro having had two cataract surgeries in Greensboro, one before the incident being litigated, and one after litigation commenced. Therefore, given the particular facts of this case and the statement of Dr. Munn's expert, we believe Greensboro is a "similar community" to Raleigh as required by N.C. Gen. Stat. § 90-21.13(a) and plaintiffs' expert was qualified to discuss the standard in Raleigh. Finally, we disagree with Dr. Munn's assertion that plaintiffs' expert's professional experience is deficient.

Accordingly, we agree with plaintiffs.

Reversed and remanded for further proceedings.

Judges BRYANT and LEVINSON concur.